

SEALED

BY THE ORDER OF THE COURT

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

DANIEL KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Dept. of Justice

CRAIG S. NOLAN
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail: Craig.Nolan@usdoj.gov

THOMAS J. TYNAN
Trial Attorney
U.S. Dept. of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 768-1136
Thomas.Tynan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAG. NO. 20-01208-WRP |
| | ) | |
| Plaintiff, | ) | CRIMINAL COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| MARTIN KAO, | ) | |
| | ) | |
| Defendant. | ) | |

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
September 29, 2020
Michelle Rynne, Clerk of Court

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true

and correct to the best of my knowledge and belief:

<u>Count 1</u>
Bank Fraud
(18 U.S.C. § 1344(2))

In or about April 2020, within the District of Hawaii and elsewhere,

MARTIN KAO, the defendant, knowingly executed and attempted to execute a

scheme and artifice to obtain moneys, funds, credits, assets, securities, and other

property owned by, and under the custody and control of, a financial institution, by

means of false and fraudulent pretenses, representations, and promises, namely the

preparation and submission of materially false documents and statements to

Central Pacific Bank in the application process for a CARES Act Paycheck

Protection Program loan of approximately $10,000,000.

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

<u>Count 2</u>
Bank Fraud
(18 U.S.C. § 1344(2))

In or about April and May 2020, within the District of Hawaii and elsewhere, MARTIN KAO, the defendant, knowingly executed and attempted to execute a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises, namely the preparation and submission of materially false documents and statements to Radius Bank in the application process for a CARES Act Paycheck Protection Program loan of approximately $2,841,490.

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

Counts 3-7
Money Laundering
(18 U.S.C. § 1957)

On or about the dates set forth below, within the District of Hawaii and elsewhere, MARTIN KAO, the defendant, knowingly engaged and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, namely the transfer of funds from Central Pacific Bank account number XXXXXX9145, such property having been derived from a specified unlawful activity, namely Bank Fraud, in violation of Title 18, United States Code, Sections 1344(2) :

| Count | Date of Transaction | Description of Transaction | Disposition of Funds | Transaction Amount |
|---|---|---|---|---|
| 3 | 04/21/2020 | Check no. 31029 payable to NAVATEK, LLC | Deposited into Merrill Lynch account no. XXX-X3506 | $2,000,000 |
| 4 | 04/22/2020 | Check no. 30986 payable to MARTIN KAO | Deposited into Merrill Lynch account no. XXX-X2641 | $2,000,000 |
| 5 | 04/29/2020 | Check no. 31124 payable to NAVATEK, LLC | Deposited into Merrill Lynch account no. XXX-X3506 | $3,000,000 |
| 6 | 05/07/2020 | Check no. 31127 payable to NAVATEK, LLC | Deposited into Merrill Lynch account no. XXX-X3506 | $3,000,000 |
| 7 | 05/18/2020 | Check no. 31249 payable to MARTIN KAO | Deposited into FHB account no. XX-XX1787 | $20,200 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

I further state that I am a Special Agent with United States Internal Revenue Service, Criminal Investigation. This Complaint is based on the following Affidavit, which is attached hereto and incorporated herein.

Dated on this 29th day of September, 2020, at Honolulu, Hawaii.



Shaun Morita
Special Agent
IRS-CI

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crimes found to exist by the undersigned Judicial Officer at \_\_\_\_ \_\_.m. on September 29 , 2020.

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this 29th day of September 2020, at Honolulu, Hawaii.

Wes Reber Porter
United States Magistrate Judge

**SEALED**

BY THE ORDER OF THE COURT

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Shaun Morita, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      This affidavit is made in support of the foregoing Criminal Complaint against MARTIN KAO ("KAO"), charging him with Bank Fraud, in violation of 18 U.S.C. § 1344, and Money Laundering, in violation of 18 U.S.C. § 1957. During the spring of 2020, KAO fraudulently obtained more than $12.8 million in Paycheck Protection Program ("PPP") funds on behalf of his company, NAVATEK, LLC (now known as MARTIN DEFENSE GROUP, LLC). The PPP was authorized by Congress in the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, P.L. 116-136, of March 2020, to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic through forgivable loans to small businesses for job retention and other specified expenses. After committing the fraud, KAO transferred approximately $2 million to himself.

2.      I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI") and have been so employed in this capacity since June 2005. My duties as an IRS-CI Special Agent include the investigation of possible criminal violations of the Internal Revenue Code (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the Money Laundering

Control Act of 1986 (Title 18, United States Code, Sections 1956 and 1957), and other related offenses.  I successfully completed the 11-week Criminal Investigator Training Program at the Federal Law Enforcement Training Center and the 15-week Special Agent Basic Training Program at the Internal Revenue Service National Criminal Investigation Training Academy, both located in Glynco, Georgia.  I have been trained in accounting, financial investigative techniques, investigations of alleged criminal violations of the Internal Revenue laws and other financial crimes, and the laws of search and seizure.  Prior to my employment with IRS-CI, I earned a Bachelor of Business Administration degree in accounting.

3.      In the course of my employment, I have conducted or assisted in a number of criminal investigations involving violations of federal tax law, money laundering and related offenses, including wire and bank fraud, and other illegal schemes impacting financial institutions.  I have written search and seizure warrant affidavits and participated in the execution of numerous federal search warrants involving alleged criminal violations during which evidence of criminal violations were seized.  This included the seizure of documents and electronically stored data containing evidence related to criminal activity.  In most of the investigations in which I participated, where search warrants were used to seize documents, electronically stored data or other evidence, the evidence seized helped to prove the criminal violations alleged.  Recently, I have been assigned to work with the

U.S. Department of Justice and other law enforcement partners to investigate

possible fraud associated with the stimulus and economic assistance programs

created by the federal government in response to the COVID-19 pandemic.

4.      The facts set forth in this Affidavit are based on my personal

knowledge; knowledge obtained from other individuals during my participation in

this investigation, including federal law enforcement agents; interviews of

witnesses; examination of documents, records and communications; review of

information contained within government databases; and information gained

through my training and experience.

5.      This affidavit does not include each and every fact known to the

government, but only those facts necessary to support a finding of probable cause

to support the requested warrant.

## PROBABLE CAUSE

### *Overview of the Paycheck Protection Program*

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act

is a federal law enacted in or around March 2020 and designed to provide

emergency financial assistance to the millions of Americans who are suffering the

economic effects caused by the COVID-19 pandemic.  One source of relief

provided by the CARES Act was the authorization of up to $349 billion in

forgivable loans to small businesses for job retention and certain other expenses,

through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

7.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

8.      A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

9.      PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

10.     Under the PPP, the maximum loan amount is the lesser of $10 million or an amount calculated using a payroll-based formula.  The methodology used by the applicant to calculate the maximum loan amount involves aggregating payroll costs from the last twelve months for employees whose principal place of residence is the United States and subtracting compensation paid to an employee in excess of an annual salary of $100,000.  That amount is divided by twelve to calculate the average monthly payroll costs.  The average monthly payroll costs are multiplied by 2.5.  The definition of payroll costs expressly excludes compensation of an individual employee in excess of an annual salary of $100,000.

### *Relevant Entities*

11.     MARTIN DEFENSE GROUP, LLC ("MDG") (fka NAVATEK, LLC) is a research, engineering, design, and innovations company that specializes in novel systems for the Department of Defense and other partners in academia and other scientific fields.  According to its website (mdefensegroup.com, formerly

www.navatekllc.com), the company was founded in 1979 and is under the current

leadership of KAO, who serves as Chief Executive Officer.

12.     MDG fka NAVATEK, LLC is headquartered in Honolulu, Hawaii

and has branch offices located in Portland, Maine; Bangor, Maine; South Kingston,

Rhode Island; Arlington, Virginia; Ann Arbor, Michigan; Wichita, Kansas;

Stillwater, Oklahoma; and Columbia, South Carolina.

13.     According to the Business Registration Division of the State of

Hawaii, Department of Commerce and Consumer Affairs ("Hawaii DCCA"),

NAVATEK, LLC was converted from NAVATEK, LTD on August 31, 2018, and

changed its name to MDG on July 27, 2020.  The mailing address listed is 841

Bishop Street, Suite 1110, Honolulu, Hawaii 96813 and the sole manager is KAO.

14.     According to the Hawaii DCCA, MDG fka NAVATEK, LLC is the

sole manager for NAVATEK LIFTING BODY TEC ("NLBT"), NAVATEK CFD

TECHNOLOGIES, LLC ("NCT"), NAVATEK ALTERNATIVE ENERGY

("NAET"), and NAVATEK SHC LLC.

15.     NLBT was registered to do business on June 18, 2008 and was

terminated on December 31, 2019.

16.     NCT was registered to do business on June 18, 2008.  The name

changed to MDG – RI, LLC on July 27, 2020.

17.    NAET was registered to do business on June 18, 2008, and was terminated on December 31, 2019.

18.    NAVATEK SHC LLC was registered to do business on April 10, 2019 and is currently active and in good standing.

19.    NLBT, NCT, NEAT and NAVATEK SHC LLC share the same business address as MDG fka NAVATEK, LLC.

### PPP Application to Central Pacific Bank

20.    At all times relevant here, Central Pacific Bank ("CPB") was an approved SBA lender and participated as a lender in the PPP.

21.    According to information provided by CBP, on or about April 3, 2020, KAO submitted to the bank a PPP application in the name of NAVATEK LLC seeking $10,000,000 in PPP funds.  In the application, KAO represented himself as the President/CEO & Manager of NAVATEK, LLC with 99% ownership of the company.

22.    In the PPP application, KAO claimed that NAVATEK, LLC had 490 employees and an average monthly payroll of $4,072,000.

23.    KAO also certified as required that, from February 15, 2020 to December 31, 2020, NAVATEK, LLC had not and would not receive another PPP loan.

24.     As additional support for the PPP application, KAO submitted ADP Statements of Deposits and Filings for NAVATEK, LLC, NCT, NLBT, and NAET for the first, second, third, and fourth quarters of 2019.  The statements summarize Federal (IRS) Forms 941 (Employer's Quarterly Federal Tax Return) for each respective company for the given period.  The "Taxable Medicare Wages/Tips" figure on each of the statements was highlighted in yellow.  The following table summarizes the 2019 total "Taxable Medicare Wages/Tips" and average number of employees from the ADP Statements of Deposits and Filings:

| Company Name | 2019 Taxable Medicare Wages/Tips | Average Number of Employees (rounded up) |
|---|---|---|
| NAVATEK, LLC | $8,497,349.02 | 96 |
| NCT | $3,688,629.15 | 40 |
| NLBT | $265,755.96 | 1 |
| NAET | $167,995.21 | 1 |
| **Total** | **$12,619,729.34** | **138** |

25.     KAO also included in the PPP loan application a Summary of Payroll and Related Costs for NAVATEK, LLC, NCT, NLBT, and NAET for the same time period.  This summary included the quarterly taxable Medicare wages/tips paid in 2019 for NAVATEK, LLC, NCT, NLBT, and NAET, quoted above.  Additionally, the summary included an "Office Expansion Pool" for various U.S. cities, totaling $32,630,000; "Employees Benefits," including life insurance, medical insurance, dental premiums, workers compensation insurance, temporary

disability insurance, and temporary disability contributions, totaling $1,019,422; and an "Expansion and Bonus Pool (All)" of $2,598,272.

26.     The combined payroll costs claimed by KAO in the PPP application totaled $48,867,425.

27.     On or about April 2, 2020, KAO emailed a Senior Vice President at CPB stating, "I would like to highlight something VERY IMPORTANT in our payroll cost numbers. . . . Navatek now has a significant and growing presence and employees" in several specified states.  KAO further stated that he "work[s] very closely" with specified U.S. Senators from those states who had "championed" the CARES Act, and he "expected to provide an update shortly to each of them." KAO stated that he "strongly urge[d] CPB to process Navatek's application as quickly as possible, so [he] can give great praise to how CPB was able to administer quickly the intent of Congress and the President, in helping Navatek keep its jobs and payroll in each of their respective states."

28.     On or about April 7, 2020, KAO emailed CPB stating, "I just got off a couple calls with [a U.S. Senator and Member of Congress].  The [*sic*] specifically asked about the status of our PPP loan application and were very adamant about stepping in, if our application was getting stalled.  I told them that we were informed that it was approved yesterday by the SBA and now just waiting for the funds."

29.     On or about April 10, 2020, KAO emailed CPB stating, "Some of the Senate offices staff have already responded to my inquiry about CPB needing dispositive rules/guidance from the SBA to fund the loan.  They said the guidance is clear.  Once the SBA approves and gives a loan number the bank is empowered to fund the loan."  KAO further stated, "I understand you are caught in the middle, but we're not able to speak to anyone else at CPB.  Obviously there must be someone that's making the executive decision to form this committee.  20 people didn't just assemble for the joy of it.  Who is the person(s) at CPB?  Is he/she willing to get onto a call with Congress?  They will be happy to make it unequivocally clear what the rules are."

30.     On or about April 10, 2020, KAO emailed CPB again, providing a link to a PPP Information Sheet for Lenders he claimed he was told to forward to CPB by a senior staff member of a U.S. Senator.  KAO quoted from the Information Sheet, "What underwriting is required?  You will need to verify that a borrower was in operation on February 15, 2020[,] . . . had employees for whom the borrower paid salaries and payroll taxes, [and] the dollar amount of average monthly payroll costs."  KAO then stated, "[The Senate senior staffer] wanted to STRESS that these are simple checks of information and mathematical accuracy…it is NOT an audit and the bank is ABSOLUTELY empowered and relying on the applicants [*sic*] representations and certifications.  To perform the

above should take minutes…NOT days.  The bank has ZERO risk! . . . I'm not barking at you.  I'm just relaying a message from one of [the] highest authorities possible in Hawaii.  Can you make sure this message gets to the correct person(s)."

31.    On or about April 10, 2020, KAO emailed CPB again stating, "[The Senator] is suggesting a conference call with his Banking Committee and SBA staff director . . . **SHE HELPED WRITE THE PPP RULES**. . . . . She has confirmed directly that CPB should and is obligated to fund once SBA issues the approval number.  Any additional review the bank does should be perfunctory… at best."

32.    On or about April 15, 2020, KAO signed the note for the PPP loan from CPB.

33.    On or about April 17, 2020, CPB deposited $10,000,000 into NAVATEK, LLC's bank account (XXXXXX9145) at CPB.

### *PPP Application to Radius Bank*

34.    At all times relevant here, Radius Bank ("Radius") was an approved SBA lender and participated as a lender in the PPP.

35.    On or about April 20, 2020, a Principal at a consulting firm in Washington, D.C. emailed an executive at Radius ("Radius Executive 1") to connect him to KAO and the Chief Financial Officer ("CFO") for NAVATEK, LLC at the time.  The Principal informed Radius Executive 1 that KAO and the

CFO had "tried to go through their bank for a PPP loan and were ultimately

unsuccessful" and that "[t]hey would very much like your help in filing for a PPP

loan."

36.     Later that same day, KAO emailed Radius Executive 1 a PPP

application and supporting documents for NCT.  KAO noted that NCT "is our

Computational Fluid Dynamics ('CFD') company."  KAO stated further that,

"[W]e did submit an application with a local Hawaii bank for a completely

separate company, and that is the one that got fumbled."  Additionally, KAO

stated, "I know very few banks are taking applications.  We would be supremely

grateful if Radius Bank could make an exception and get this application submitted

and approval assigned."  KAO emphasized, "[I]f we were able to get this funded

even in 10 day [sic] or whatever . . . , it would go a monumental way toward our

CFD company's ability to maintain payroll and benefits."

37.     On or about April 21, 2020, Radius Executive 1 replied to KAO's

email, stating "happy to help a client of [consulting firm] that seems to be left

behind by other banks."  He asked KAO whether "the payroll calc provided [with

his PPP application] exclude salaries over $100K?"  KAO replied, "Yes.  The

calculation excludes any salary amount above $100K."

38.     The PPP application KAO submitted to Radius for NCT sought

$2,841,490 in PPP funds.  KAO signed the application and represented himself as

the President/CEO & Manager of NCT, with 99% ownership of the company, and claimed that NCT had 140 employees and an average monthly payroll of $1,136,596.

39.     In the Radius application KAO also certified as required that, from February 15, 2020 to December 31, 2020, NCT had not and would not receive another PPP loan.  As additional support for the PPP application, KAO submitted the same ADP Statements of Deposits and Filings for NAVATEK, LLC, NCT, NLBT, and NAET that he had submitted in support of his PPP application to CPB.

40.     KAO also included a Summary of Payroll and Related Costs for NCT for 2019, which contained the same quarterly taxable Medicare wages/tips for NAVATEK, LLC, NCT, NLBT, and NAET that he had submitted to CPB.  The summary also included the same "Employees Benefits" information (*i.e.*, life insurance, medical insurance, dental premiums, workers compensation insurance, temporary disability insurance, and temporary disability contributions, retirement plan contributions) that KAO had submitted to CPB.

41.     On or about April 30, 2020, the Controller for NAVATEK LLC, at the request of KAO, emailed Radius Executive 1 additional information, including the IRS Form 940 for NAVATEK, LLC, NCT, NLBT, and NAET; the "Radius Bank Loan Calculator"; and a "Consolidated Tax Return" for NAVATEK, LLC. The Radius President replied, "[I]f there's not a consolidated tax return for the 4

entities per the attached payroll summary I think the only way to proceed is with a separate application for each entity."  The Controller responded by providing a history of the four entities.  Specifically, the Controller stated that on December 31, 2019, NAET and NLBT "were dissolved and their employees were moved into Navatek LLC."

42.     In response, on or about May 1, 2020, Radius Executive 1 asked, "The only question regarding the borrowing and surviving entity, wouldn't it be Navatek LLC rather than Navatek CFD Technologies? The later [*sic*] is listed as the applicant on the PPP application and if CFD was dissolved in 2019 I would think Navatek LLC should be the applicant?"  KAO responded, "Thanks for the call this morning.  Pursuant to our conversation, please include both Navatek and Navatek CFD as borrowers on the Promissory Note with Radius Bank."

43.     On or about May 4, 2020, KAO signed the note for the PPP loan from Radius.  The note identified NCT as the borrower.

44.     On or about May 6, 2020, Radius deposited $2,841,490 into NAVATEK, LLC's bank account (XXXXXXXX9145) at CPB.

### *PPP Applications to First Hawaiian Bank*

45.     At all times relevant here, First Hawaiian Bank ("FHB") was an approved SBA lender and participated as a lender in the PPP.

46.     According to information provided by FHB, on or about April 21, 2020, KAO submitted to the bank a PPP application in the name of NAVATEK SHC LLC seeking $2,852,839 in PPP funds.  In his email, KAO stated,

> As we discussed, we dropped the ball with timing and process the first time. Our entire company structure is complicated to say the least.  With operations/offices/employees and entities all over the country, we really got confused on how to apply.  Long story…short….we discussed with SBA and figured it out…too late.  We'll [*sic*] here is hopefully our second chance.  The SHC Entity is our (Salaries Hawaii Company) entity.  We are applying under that entity alone and told that is the way to correctly do it.  So the application is correct and all calculation have been reviewed to eliminate all salary amounts in excess of $100K.

47.     In the application, KAO represented himself as President/CEO & Manager of NAVATEK SHC LLC with 99% ownership of the company.

48.     In the PPP application, KAO claimed that NAVATEK SHC LLC had 140 employees and an average monthly payroll of $1,141,136.

49.     KAO also certified as required that, from February 15, 2020 to December 31, 2020, NAVATEK SHC LLC had not and would not receive another loan under the PPP.

50.     As additional support for the PPP application, KAO submitted the same ADP Statements of Deposits and Filings for NAVATEK, LLC, NCT, NLBT, and NAET that he had submitted to CPB and Radius.

51.     On or about April 21, 2020, a Vice President at FHB emailed KAO questions about his application.  Specifically, the Vice President suggested that

KAO should have certified that he was "an owner of any other business," as indicated on the application.  Further, the Vice President noted, "The [Tax Identification Numbers] on the 941 forms attached do not match the TIN on the application.  Please submit the correct 941 and include payroll only for the applying entity in your loan amount calculations."

52.     In response to the Vice President's questions about other ownership, KAO, in part, stated, "Yes, you are technically correct on this.  The box should be checked yes.  Yes, we have several entities that have employees. . . ."  The Vice President replied, "Since you are attesting to the accuracy of the information provided, you should check whatever box is correct."

53.     In response to the discrepancy regarding the TINs, KAO, in part, stated, "[T]he varying entities have employees, but all payroll is 'cleared' through SHC (Salaries Hawaii Company, LLC).  Otherwise we would have to submit like 10 different PPP applications, which I think makes no sense. . . ."  The Vice President replied, "[Y]ou should apply with whatever entity's payroll data you will be submitting (Form 941 and payroll register listing all employees) and seeking forgiveness for."

54.     After the email exchange discussed above, on or about April 21, 2020, the Controller for NAVATEK, LLC, on behalf of KAO, emailed two PPP

applications to FHB, one each for NAVATEK, LLC and NCT. The applications were signed by KAO and dated April 21, 2020.

      a.     The application for NAVATEK LLC requested $1,918,059 in PPP funds and claimed 122 employees and an average monthly payroll of $767,224.

      b.     The application for NCT requested $835,492 in PPP funds and claimed 47 employees and an average monthly payroll cost of $334,197.

      c.     As additional support for the applications, KAO and the Controller included the same ADP Statements of Deposits and Filings for NAVATEK LLC and NCT that KAO submitted to CPB and Radius Bank.

      d.     On both applications, KAO certified as required that, from February 15, 2020 to December 31, 2020, NAVATEK LLC and NCT had not and would not receive another loan under the PPP.

55.     On or about April 22, 2020, the Controller emailed revised PPP applications for NAVATEK, LLC and NCT and supporting documentation to FHB. Both were signed by KAO and dated April 21, 2020.

      a.     The application for NAVATEK LLC requested $1,382,338 in PPP funds and claimed 122 employees and an average monthly payroll of $552,935.

b.      The application for NCT requested $691,125 in PPP funds and claimed 47 employees and an average monthly payroll of $276,450.

c.      Included as an attachment to the email were SBA PPP – Supplemental Worksheets to calculate the eligible PPP loan amount and accompanying Optional Worksheet Tool used to calculate eligible payroll costs for NAVATEK, LLC and NCT.  The Optional Worksheet Tool for NAVATEK, LLC included 24 employees with annualized wages subject to the $100,000 cap in order to determine the eligible wages to be included in total payroll costs, which resulted in a net decrease in average monthly payroll of $214,289 and an eligible PPP loan amount of $535,721.  The Optional Worksheet Tool for NCT included 15 employees with annualized wages subject to the $100,000 cap in order to determine the eligible wages to be included in total payroll costs, which resulted in a net decrease in average monthly payroll of $57,747 and an eligible PPP loan amount of $144,367.

56.     On or about April 22, 2020, the Vice President at FHB asked for additional information regarding the related corporate entities under common ownership and management and additional supporting documentation regarding the non-payroll related purpose of the loan.  In response, the Controller emailed the same applications explained in paragraph 55 above, a revised Addendum A, and

purported utility and lease documentation.  The revised Addendum A identified the

following as related entities 100 percent owned by KAO: NAVATEK, LLC; NCT;

NAVATEK SHC LLC; Navatek – ME, LLC; Navatek – OK, LLC; and Navatek –

KS, LLC.

     57.    On or about April 28, 2020, KAO emailed the Vice President to

inquire about the status of his loan applications.  In his email, KAO stated:

> I wanted to check in to see if you've gotten any intel on our applications
> or FHB's applications in general on this second round of the PPPs.  We
> saw how things got off to a clunky start, with the SBA system crashing
> almost immediately on Monday morning.  We have a separate company
> in Chicago, Illinois and they were able to confirm this morning that they
> were successful in submitting that company's application into the SBA
> E-Tran system last night.  That company of our is hoping to receive a
> message later this evening with verification of approval and next steps.
> Wondering how things look at FHB.

The Vice President responded, "The two Navatek applications were entered into

the SBA e-tran system but were rejected as the two TINs already have PPP loans

approved.  Is this correct?  Please call me."  On or about April 29, 2020, KAO

replied:

> Thank you again for all your help and time on this.  After much a do
> [*sic*] last night and this morning, we have made no progress on getting
> to the bottom of this and with SBA on getting the actual approval
> notifications or numbers.  The only thing we found in our various
> accountant's emails, were confirmations that our applications have
> been submitted.  I'm assuming the rejection notification you received
> did not include the approval numbers?  If so, could you forward those
> to me?  Otherwise, no worries.  We're over it already.  We've spent
> way too much time and wasted too much of your time on this, and for

too little money involved in the scheme of our overall operations and revenue. Nevertheless, thank you and FHB again!

58.     Later that day, the Vice President recommended that FHB contact CPB to resolve the denial. In response, KAO stated, "We talked to CPB and was able to track down one of the approval numbers. The second one we are still waiting on. We have an 'insider' at SBA via our contacts at pretty high levels on the Senate Banking Committee. Should hear soon from them. Thanks again!" The Vice President replied, "So it sounds like you're all set with CPB to book one of the loans. Do you know which company that is for? What about the other loan, where you said the documents were sent to your assistant controller but they didn't know what to do with it so deleted the file?" In response, KAO stated, "We're all set. Those other applications were from our other companies and operations on the mainland. We're sorting those out now with the accounting folks there. Most of those are 'relatively small' and should be resolved by tomorrow."

59.     Subsequently, KAO abandoned his efforts to obtain from FHB additional PPP loans.

### *Interview of Former Executive*

60.     On August 6, 2020, investigators interviewed a former executive and manager ("Executive") of Navatek, Ltd. He stated the following:

61.     Executive hired KAO in 2010 and made him President of Navatek, Ltd. in 2012. Navatek, Ltd. was converted to NAVATEK, LLC, which was sold to

KAO on March 1, 2019. Executive maintained a 1% ownership interest in the company and had an employment contract to oversee two naval contracts and provide administrative services, including payroll, through his company, Pacific Marine and Supply Company, Ltd. ("PMSC").

62.     MDG fka NAVATEK, LLC subleases two office spaces from PMSC in Suite 1110 on the eleventh floor of 841 Bishop Street in Honolulu. MDG fka NAVATEK, LLC maintains a computer server on-site.

63.     Executive learned about KAO applying for PPP funds because KAO requested payroll and related information for the application from PMSC. Executive did not know the details of KAO's PPP loan applications until approximately the week of July 7, 2020, when he read a news article about NAVATEK, LLC being one of the largest recipients of the PPP loan program in Hawaii.

64.     Executive did not believe MDG fka NAVATEK, LLC was suffering financially as a result of the COVID-19 pandemic. During the pandemic, the company had hired employees and opened branch offices.

65.     On or about July 14, 2020, Executive learned from reviewing the SBA website that NAVATEK, LLC and its subsidiary, NCT, had claimed to have approximately 490 and 140 employees, respectively. Executive verified with his payroll department at PMSC that those figures were inaccurate.

66.     On or about July 23, 2020, Executive and others met with KAO to discuss the PPP loans.  During the meeting:

a.     Executive told KAO that he had concerns that KAO may have misrepresented the number of employees based on what he saw on the SBA website, and therefore he was asserting his minority shareholder interest to obtain a copy of the loan application.  Executive told KAO the SBA website showed NAVATEK, LLC as having 490 employees and NCT as having 140 employees.

b.     KAO said he had not seen the SBA website, and that NCT did not matter because they did not get a PPP loan for that company.  KAO said the application for NAVATEK, LLC was correct and that the number of employees included prospective employees.  KAO said he thought that was okay under the rules, and claimed that he had been advised by the staff of several U.S. Senators and a supervisory staff member of the SBA that he could include prospective employees.  KAO also said he was informed that the eight-week eligibility period of wages paid would most likely be extended to the end of the year.  KAO said he based the prospective employee numbers on the contracts they had, and were going to have, and came up with a manning schedule of the number of employees needed for those jobs, which were used for the PPP loan application.

c.      Executive raised his concerns that the application did not exclude employee salaries in excess of $100,000 per year from the PPP loan computation.  KAO responded by saying he did everything in conformance with what he was advised.

d.      At the end of this meeting, KAO asserted that the SBA may have made a mistake by tripling the numbers because they were extending the eight-week eligibility date.

67.     After the meeting, KAO told Executive that he did not think Executive was entitled to the PPP loan application because it contained confidential information.

### *Interview of Former Employee*

68.     On August 27, 2020, law enforcement interviewed the former Payroll and Benefits Manager at MDG fka NAVATEK, LLC ("Employee").

69.     Employee confirmed that MDG fka NAVATEK, LLC had an agreement with PSMC to provide administrative services, which included the processing of payroll and benefits enrollment for MDG fka NAVATEK, LLC.

70.     Employee did not think MDG fka NAVATEK, LLC was affected by the COVID-19 pandemic.  There were never any concerns raised over revenue or any talks of furloughs.  The company did not slow its expansion plans.  Employee understood that all of MDG fka NAVATEK, LLC's business was

government/military contracts and did not think those contracts were stalled as a result of the pandemic.

71.     Employee estimated that MDG fka NAVATEK, LLC employed approximately 170 people by the time Employee left the company on or about August 7, 2020.  This included employees for NAVATEK, LLC, NCT, NLBT, and NAET, and employees who worked at satellite offices in Virginia, Wisconsin, Rhode Island, Oklahoma, South Carolina, Michigan, Kansas, and a few other states where the company intended to open an office within the next six months to two years.

72.     In  approximately June 2020, MDG fka NAVATEK, LLC paid its employees COVID-19 related bonuses that ranged from $1,000 to $2,000, based upon their annual salary, and allowed employees to cash-out their paid time off ("PTO").  The combined amount of the bonuses and PTO cash-out benefits equated to approximately one pay period's gross payroll, $350,000 to $375,000.

73.     Employee stated that between 2019 and 2020, the Controller received a $100,000 pay raise, while the CFO received a raise of approximately $50,000 to $70,000.

74.     Employee stated that MDG fka NAVATEK, LLC maintains a computer server behind a locked door within the office on the eleventh floor of 841 Bishop Street in downtown Honolulu.

### *Other Documents*

75.     According to documents obtained by investigators, on or about March 30, 2020, an executive at NAVATEK, LLC emailed an employee at PSMC and asked for "[a] list of all employees for the period 01/01/19 – 02/29/20 which includes . . . Gross Payroll [and] Payroll Taxes," by "individual versus in total."

76.     On or about March 31, 2020, PSMC sent NAVATEK, LLC's CFO 2019 Forms W-2 (Wage and Tax Statement) issued by NAVATEK, LLC and NCT with year-end gross amounts.

      a.     The year-end summary listed gross wages of $8,497,349.02 and $3,688,629.15, respectively.  The combined gross wages was $12,185,978.17, which is the same combined total Taxable Medicare Wages/Tip identified on the ADP Statements of Deposits and Filings for the first, second, third, and fourth quarters of 2019 for NAVATEK, LLC and NCT that KAO used to substantiate the payroll cost for the PPP loan applications discussed above.

      b.     As shown in the table below, the Forms W-2 include $2,564,253.35 of gross wages in excess of $100,000 per year per employee paid to a total of 39 employees, including KAO, who made $671,883.17, that was required to be excluded from the computation to determine the loan amount.

| Company Name | 2019 Gross Wages in Excess of $100,000 per Year | Number of Employees Paid in Excess of $100,000 per Year |
|---|---|---|
| NAVATEK, LLC | $ 1,871,291.71 | 24 |
| NCT | $ 692,961.64 | 15 |
| Total | $ 2,564,253.35 | 39 |

### *PPP Loan Proceeds*

77.   A review of available bank records for CPB account number XXXXXX9145, Merrill Lynch account numbers XXX-X3506 and XXX-X2641 and First Hawaiian Bank ("FHB") account number XX-XX1787 reveals the following transaction history.  This review is ongoing.

78.   On or about April 17, 2020 and May 6, 2020, the PPP loan proceeds of $10,000,000 and $2,841,490, respectively, were deposited into NAVATEK, LLC's bank account number XXXXXX9145 at CPB.  The account signature card was last updated on December 19, 2019, and includes KAO, the Controller, and the CFO as the authorized signers.

79.   Prior to the deposit on April 17, 2020, CPB account number XXXXXX9145 had a balance of $590,596.30.  The account appears to be the general operating account for NAVATEK, LLC, as there are numerous deposits, transfers, checks, withdrawals, etc. comingled with the PPP loan proceeds.  As of July 31, 2020, the ending balance on this account was $759,825.10.

26

80.    The following chart depicts selected transfers of funds from NAVATEK, LLC's bank account number XXXXXX9145 at CPB.  Based on a tracing analysis, each transfer contained more than $10,000 of PPP loan proceeds.

| Date of Transaction | Description of Transaction | Disposition of Funds | Transaction Amount |
|---|---|---|---|
| 04/21/2020 | Check no. 31029 payable to NAVATEK, LLC | Deposited into Merrill Lynch account no. XXX-X3506 | $2,000,000 |
| 04/22/2020 | Check no. 30986 payable to MARTIN KAO | Deposited into Merrill Lynch account no. XXX-X2641 | $2,000,000 |
| 04/29/2020 | Check no. 31124 payable to NAVATEK, LLC | Deposited into Merrill Lynch account no. XXX-X3506 | $3,000,000 |
| 05/07/2020 | Check no. 31127 payable to NAVATEK, LLC | Deposited into Merrill Lynch account no. XXX-X3506 | $3,000,000 |
| 05/18/2020 | Check no. 31249 payable to MARTIN KAO | Deposited into FHB account no. XX-XX1787 | $20,200 |

81.    NAVATEK, LLC maintained Working Capital Management Account number XXX-X3506 at Merrill Lynch.  The account signature card includes KAO, the Controller, and the CFO as the authorized signers.  On April 1, 2020, the account had a net portfolio balance of $3,548,589.03.  On or about April 20, 2020, NAVATEK, LLC check number 31029 in the amount of $2,000,000 from CPB account number XXXXX9145 was deposited into this account, containing

approximately $881,560.21 of proceeds traceable to the PPP loans.  On or about

April 28, 2020, NAVATEK, LLC check number 31124 in the amount of

$3,000,000 from CPB account number XXXXXX9145 was deposited into this

account, which represented proceeds traceable to the PPP loans.  On or about May

6, 2020, NAVATEK, LLC check number 31127 in the amount of $3,000,000 from

CPB account number XXXXXX9145 was deposited into this account, containing

approximately $2,402,040.69 of proceeds traceable to the PPP loans.  The total

proceeds traceable to the PPP loans deposited into this account was approximately

$6,283,600.90.  There were numerous deposits, checks, *etc*. comingled with the

PPP loan proceeds in this account.  As of August 31, 2020, the ending net portfolio

balance in the account was $12,502,473.02.

82.     In a letter dated July 29, 2020, KAO authorized the change of the

business name on Merrill Lynch account number XXX-X3506 from NAVATEK,

LLC to MARTIN DEFENSE GROUP, LLC.

83.     At all times relevant here, KAO maintained personal Cash

Management Account number XXX-X2641 at Merrill Lynch.  KAO is listed as the

sole authorized signer on the account.  On April 1, 2020, the account had a net

portfolio balance of $2,407,256.38.  On or about April 21, 2020, NAVATEK, LLC

check number 30986 in the amount of $2,000,000 from CPB account number

XXXXXX9145 was deposited into this account, containing approximately

$1,918,715.52 of proceeds traceable to the PPP loans.  As of July 31, 2020, the ending net portfolio balance in the account was $4,596,596.96.

84.     KAO maintained joint checking account number XX-XX1787 at FHB.  The account signature card includes KAO and his spouse as the authorized signers.  On May 7, 2020, the account had a balance of $63,061.60.  On or about May 18, 2020, NAVATEK, LLC check number 31249 in the amount of $20,200 from CPB account number XXXXXX9145 was deposited into this account, which represented proceeds traceable to the PPP loans.  As of July 6, 2020, the ending balance on the account was $13,818.30.

## SEIZURE AND FORFEITURE OF BANK ACCOUNT FUNDS

85.     As reflected by the transaction history set forth above, probable cause exists to believe that up to $12,841,490, currently held by CPB in, or on behalf of, CPB account number XXXXXX9145, up to $8,000,000, currently held by Merrill Lynch in, or on behalf of, Merrill Lynch account number XXX-X3506, up to $2,000,000, currently held by Merrill Lynch in, or on behalf of, Merrill Lynch account number XXX-X2641, and up to $20,200, currently held by FHB in, or on behalf of, FHB account number XX-XX1787, are proceeds of Bank Fraud, in violation of 18 U.S.C. § 1344, and/or property involved in Money Laundering, in violation of 18 U.S.C. § 1957, by KAO.  Accordingly, probable cause exists to believe that the funds are subject to forfeiture to the United States pursuant to:

a. 18 U.S.C. § 981(a)(1)(A), as property, real or personal,

involved in a transaction or attempted transaction in violation of 18 U.S.C. §

1957, or as property traceable to such property;

b. 18 U.S.C. § 982(a)(1), as property, real or personal, involved in

an offense in violation of 18 U.S.C. § 1957, or as property traceable to such

property; and/or

c. 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as property,

real or personal, which constitutes or is derived from proceeds traceable to

any offense constituting "specified unlawful activity" (as defined in 18

U.S.C. § 1956(c)(7)), or a conspiracy to commit such an offense.  In the

instant case, the alleged specified unlawful activity is Bank Fraud, in

violation of 18 U.S.C. § 1344.

86. Pursuant to 18 U.S.C. § 984, it is not a defense that the property

involved in an offense that is the basis for forfeiture has been removed from an

account in a financial institution and replaced by identical property; the

government need not identify the specific property involved in the offense that is

the basis for forfeiture; and any identical property found in the same financial

account as the property involved in the offense that is the basis for forfeiture is

subject to forfeiture, as long as the action to forfeit property not traceable to the

offense that is the basis for forfeiture is commenced within one year from the

date of the offense.  As set forth in the Probable Cause section above,

KAO committed the offenses less than one year ago.

87.    The Court is authorized to issue a warrant authorizing the

seizure ofproperty subject to forfeiture in the same manner as provided by

a search warrant in a criminal case pursuant to 21 U.S.C. § 853(f), as

incorporated by 18 U.S.C. §982(b)(1) and 28 U.S.C. § 2461(c), and in a

civil case pursuant to 18 U.S.C. § 981(b).

## CONCLUSION

88.    Based on the forgoing, probable cause exists to believe that:

a.    KAO has committed Bank Fraud, in violation of 18 U.S.C.

§§ 1344 and 2, with respect to each of the two PPP approved loan

applications described above, and Money Laundering, in violation of

18 U.S.C. §§ 1957 and 2, with respect to each of the five transfers

from CPB account number XXXXXX9145 summarized in the table

in Paragraph 80 above, as set forth in the foregoing Criminal

Complaint; and

b.    Funds located in CPB account number XXXXXX9145,

Merrill Lynch account numbers XXX-X2641 and XXX-X3506, and

FHB account number XX-XX1787 are proceeds of and property

involved in these same offenses; those funds are subject to forfeiture

to the United States pursuant to Title 18, United States Code,

Sections 981(a)(1)(A), 981(a)(1)(C), 982(a)(1), and 984, and Title

28, United States Code, Section 2461(c), up to the amounts

specified in Paragraph 85 above; and those amounts in the four

accounts are subject to seizure.

Shaun Morita
Special Agent
IRS-CI


This Criminal Complaint and Affidavit in support thereof were presented to,
approved by, and probable cause to believe that the defendant above-named
committed the charged crimes found to exist by the undersigned Judicial Officer at
___.m. on September **29**, 2020.


Sworn to under oath before me telephonically, and attestation acknowledged
pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this**29th** day of
September 2020, at Honolulu, Hawaii.



Wes Reber Porter
United States Magistrate Judge


32